0931

Chad E. BOWIE, a minor by his Guardian ad Litem Pamela BOWIE, Respondent v. Henry B. HEARN, IV, Appellant.

(355 S. E. (2d) 550)

Court of Appeals

*Cary C. Doyle*, of *Doyle & O'Rourke*, Anderson, *for appellant.*

*J. Marvin Mullis, Jr.*, and *Carl N. Lundberg*, Columbia, *for respondent.*

Heard Feb. 19, 1987.

Decided April 6, 1987.

*Per Curiam:*

Appellant, Henry B. Hearn, IV, appeals from a jury verdict awarding respondent, Chad E. Bowie, a minor by his guardian-ad-litem, Pamela Bowie, $18,000.00 in this medical malpractice action. We reverse.

In an action at law, tried by a jury, our jurisdiction extends only to the correction of errors at law. *Jones v. Sun Publishing Company, Inc.*, 278 S. C., 12, 292 S. E. (2d) 23 (1982).

On September 14, 1981, Dr. Hearn, an obstetrician-gynecologist, delivered Chad Bowie by a caesarean section operation. In making the incision, Dr. Hearn cut the baby's cheek. As a result of the cut, approximately two centimeters in length, the minor-plaintiff has a small scar on his cheek. In August of 1984, this action was brought alleging the baby's cheek was cut as a result of Dr. Hearn's negligence.

Dr. Hearn admitted he cut the cheek, but denied any negligence, asserting such a laceration is a normal risk of a caesarean section procedure. At trial, Dr. Hearn's timely motions for a nonsuit and a directed verdict were denied. At the close of trial the jury awarded the minor-plaintiff $18,000.00 in actual damages.

We hold the trial court erred in submitting the case to the jury because the minor-plaintiff failed to present required expert testimony to allow the jury to decide whether Dr. Hearn was negligent.

A plaintiff in a medical malpractice action must present sufficient evidence to meet the two prong test set out in *Cox v. Lund,* 286 S. C. 410, 334 S. E. (2d) 116, (1985), and affirmed in *Pederson v. Gould,* 288 S. E. 141, 341 S. E. (2d) 633 (1986). This two prong test requires the plaintiff to:

(1) Present evidence of the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances; AND

(2) Present evidence that the defendant doctor departed from the recognized and generally accepted standards, practices and procedures in the manner alleged by the Plaintiff.

*Pederson,* 341 S. E. (2d) at 634 (quoting *Cox v. Lund,* 334 S. E. (2d) at 118). The Plaintiff is required to use expert testimony to establish both of these prongs unless the subject matter is such that the common knowledge and experience of the jury is sufficient to evaluate the conduct of the doctor. *Pederson,* 341 S. E. (2d) at 634.

We first consider whether damage to the baby during a caesarean section delivery is a proper subject matter for the common knowledge exception. We hold it is not. *See Pederson,* 341 S. E. (2d) at 634 (a vaginal hysterectomy found to be a significant surgical procedure and not proper for the common knowledge exception).

A caesarean section is a serious operation. Its complexity is in no way diminished by the fact it is a "common" procedure. Many very complex and difficult surgical procedures are performed daily. The following

passage from *Gynecology and Obstetrics*, Volume 3, Revised Edition, 1985, was read into the record at trial:

> Caesarean Section, despite its relative safety insofar as birth trauma is concerned, can still result in significant injury. The most common is laceration by the scalpel at the time of the uterine incision. Labor and delivery are difficult and dangerous for the fetus and the potential for mechanical injury is great.

The passage then instructs doctors to be very careful and to be certain "... there is no safer way for both mother and infant to achieve an injury free delivery." The record reveals Dr. Hearn first attempted to deliver the baby normally. When this failed, Dr. Hearn attempted delivery with forceps. Dr. Hearn abandoned this effort when the baby's head "failed to turn with rotation which implies ... there was a lot of resistance." Dr. Hearn concluded continuing with the forceps could potentially damage the baby and, thus, he elected to perform a caesarean section.

According to the record a caesarean section is typically accomplished with a series of progressively deepening incisions. Here, the procedure was made more difficult by several factors, including the muscle of the uterus was thinner than usual, the baby had little amniotic fluid present due to a lengthy period of labor, and there was "not any good landmark for the difference between ... [the baby's head and the muscle of the mother's uterus]," according to Dr. Hearn. In other words, the baby's cheek was pressed against the mother's muscle. The quality of Dr. Hearn's performance in this procedure is not within the common knowledge of the jury and, thus, expert testimony was required to prove Chad's case. *Pederson*, 341 S. E. (2d) at 635.

Finally, we consider whether the expert testimony proffered by the minor-plaintiff satisfies the test in *Cox*, 334 S. E. (2d) 116.

This testimony is summarized in the minor-plaintiff's brief, correctly, as follows:

> ... the proper standard of care required ... [Dr. Hearn] to exercise sufficient care ... to not cut the baby.

The expert testifying for the minor-plaintiff, John F. Hillabrand, an obstetrician-gynecologist, thus concluded it was outside the standard of care to cut the baby. Dr. Hearn argues this is insufficient to satisfy the test in *Cox* and we agree. We hold Dr. Hillabrand's mere conclusory statements do not satisfy the requirement contemplated by the Supreme Court in *Cox*, 334, S. E. (2d) at 116.

In *Cox*, the patient died because his colon was perforated during a colonoscopy, performed by the defendant-doctor. The decedent's administratrix, who brought the action, produced expert testimony detailing the appropriate measures in preparing the colon for the procedure and in conducting the procedure. The expert witnesses also detailed exactly how the defendant-doctor deviated from the standard of care; namely in not properly preparing the colon and in persisting with the procedure when he knew or should have known to stop.

Under the plaintiff's reasoning in this case, the doctors in *Cox* could simply have testified that normally colons are not perforated during colonoscopies, the standard of care, therefore, is a doctor should not perforate the colon, and to do so violates the standard of care. Such reasoning would, in effect, make a doctor an insurer of a perfect result in every surgical procedure. A doctor is not an insurer of health and negligence may not be inferred. *Todd v. United States*, 570 F. Supp. 670 (D.C.S.C. 1983); *Landers v. Georgia Baptist Medical Center*, 175 Ga. App. 500, 333 S. E. (2d) 884 (1985).

We hold the minor-plaintiff did not meet his burden of proof since the expert testimony is insufficient to satisfy *Cox*, 334 S. E. (2d) at 116. Therefore, the trial court erred in denying Dr. Hearn's motion for a nonsuit.

Reversed.